IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES E. JOYNER | * | |
| | * | |
| v. | * | Civil No. CCB-12-2294 |
| | * | |
| A.C. & R. INSULATION CO., et al. | * | |
| | * | |
| | * | |
| | ****** | |

**MEMORANDUM**

Plaintiff James Joyner, a twenty-two-year veteran of the United States Coast Guard, was

diagnosed with malignant pleural mesothelioma in March 2012.  Three months later he brought

this asbestos products-liability action in the Circuit Court for Baltimore City.  The defendants,[1]

with the exception of Metropolitan Life Insurance Co., manufactured and distributed various

products that contained asbestos—the principal known cause of mesothelioma.  Some of these

products allegedly were sold to the United States Navy and United States Coast Guard.  Invoking

the government contractor defense to tort liability, defendant Crane Co. removed Joyner's action

to this court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Two motions are

pending before this court.  Joyner first asks the court to remand the entire case to the Circuit

Court for Baltimore City.  In the event that motion fails, Joyner moves to sever one piece of his

claim against Crane Co. from the rest of the suit and to remand the other claims to the state court.

A hearing on both motions was held on February 8, 2013.  For the reasons set forth below, this

court will grant the motion to sever and will grant in part and deny in part the motion to remand.

---

[1] Joyner's claims against several defendants have settled or been dismissed.  According to
Joyner, the defendants that remain in the case are John Crane, Inc.; Owens-Illinois, Inc.; Union
Carbide Corp.; Kaiser Gypsum Co.; MCIC, Inc.; Metropolitan Life Insurance Co.; CBS Corp.
(as successor to Westinghouse Electric Corp.); and the Wallace & Gale Asbestos Settlement
Trust.  (*See* Mot. Sever at 4, ECF No. 140-1.)  All references in this opinion to the defendants are
intended to encompass only the remaining defendants.

**BACKGROUND**

According to the complaint, Joyner spent about two years as an electrician's assistant at the Charleston Navy Shipyard before joining the Coast Guard in 1944.  During twenty-two years of service in the Coast Guard, Joyner worked as an electrician and boiler tender on numerous ships and in several shipyards throughout the United States.  Upon his retirement from the Coast Guard in 1966, Joyner continued performing electrical work in Charleston, South Carolina, before moving to Kansas and opening his own electrical business.  While in Kansas he earned a master's degree in industrial design and worked as a teacher until his retirement in the 1990s.

Joyner, now almost ninety years old, was diagnosed with malignant pleural mesothelioma in March 2012.  The mesothelioma allegedly was caused by Joyner's inhalation of and exposure to asbestos dust during his long career in the Coast Guard and as a civilian electrician.  Joyner filed this suit in the Circuit Court for Baltimore City in June 2012, alleging four counts under the laws of Maryland: strict liability for the asbestos products' defective design and failure to warn (Count I); breach of implied warranty (Count II); negligence products-liability claims (Count III); and aiding-and-abetting and conspiracy claims related to defendants' alleged participation in a scheme to conceal and manipulate information about the dangers of asbestos (Count IV).

The complaint expressly disclaimed "any federal cause of action or any claim that would give rise to federal jurisdiction."  (Compl. ¶ 2, ECF No. 2.)  Specifically:

> [T]o the extent that any of Plaintiff's asbestos exposure occurred on board vessels of the United States military (including Naval ships) or in the construction, maintenance and/or repair of United States military vessels, Plaintiff['s] negligence claims against manufacturers, sellers and suppliers of asbestos-containing products installed on such vessels and/or aircraft are not based on a theory of defective design, but rather are based only on the theory of failure to warn.

(*Id.*)

Due to the rapidly declining condition of Joyner's health, his attorney filed an unopposed motion on July 11, 2012, to expedite Joyner's deposition.  The circuit court granted the motion the next day.  Between July 24 and July 26, counsel for Crane Co. deposed Joyner for about five hours.[2]  On July 27 the circuit court held a telephone conference with all counsel to determine the appropriate amount of additional deposition hours.  At the conclusion of that hearing the court instructed plaintiff's counsel to conduct the direct *de bene esse* deposition on August 1 and insisted that defense counsel complete their discovery deposition and *de bene esse* cross-examination on August 2.  The attorneys completed their direct and discovery depositions as instructed.  On the afternoon of August 2, however, before conducting its *de bene esse* cross-examination, Crane Co. removed the case to this court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), on the basis of the government contractor defense.[3]  No other defendant joined in Crane Co.'s removal to federal court.[4]

In its notice of removal, Crane Co. alleges that "several of the ships identified by Plaintiff were specifically designed for the United States Navy" and "were built pursuant to Navy specifications and later transferred to the Coast Guard."  (Notice ¶ 6 n.1, ECF No. 1.)  The notice further states that "Crane Co. valves were designed and manufactured pursuant to precise contracts and specifications approved by the Navy."  (*Id.* ¶ 10.)  More specifically, Crane Co. claims that certain Navy specifications "required that internal gaskets in the valves be 'asbestos

---

[2] Counsel for the other defendants were present but apparently elected not to participate in the questioning.  The deposition hours were limited by Joyner's extremely bad health and concomitant need for frequent breaks.

[3] Because the circuit court no longer had jurisdiction over the case, the deposition immediately was terminated.  The parties subsequently held a telephone conference with this court, and the court instructed defendants to complete their depositions on August 22.

[4] Although, as a general matter, all defendants must join in or consent to the removal of an action to federal court, *see* 28 U.S.C. § 1446(b)(2)(A), that requirement does not apply when the case is removed under the federal officer removal statute, *see Plourde v. Ferguson*, 519 F. Supp. 14, 16 (D. Md. 1980).

sheet gaskets.'"  (*Id.* (citing March 2012 Sargent Aff. ¶¶ 26–27, 32, ECF No. 1-4).)  Naval

Machinery Inspectors purportedly monitored all equipment for compliance with Navy

specifications and would have rejected any effort by Crane Co. to install nonconforming

equipment.  (*Id.* (citing March 2012 Sargent Aff. ¶ 29).)  Finally, the notice alleges that the Navy

"possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment

suppliers, such as Crane Co."  (*Id.* (citing Forman Aff. ¶¶ 21-23, ECF No. 1-5).)

Crane Co. substantiated its notice of removal with three affidavits.  Anthony Pantaleoni,

the Vice President of Environment, Health, and Safety at Crane Co. since 1989, briefly discussed

the relevant Navy specifications and attached an example of the Navy's 1938 valve

specifications.  (Pantaleoni Aff. ¶ 5 & Ex. A, ECF No. 1-3.)  Dr. Samuel Forman, a specialist in

preventive and occupational medicine, was heavily involved with the Navy's asbestos medical

surveillance program and its response to mass asbestos litigation.  He discusses, among other

things, the Navy's institutional knowledge about the dangers of asbestos exposure and its

rejection of efforts by suppliers and manufacturers to warn of the health effects of such exposure.

(Forman Aff. ¶¶ 22, 27, 59–65.)

And finally, Crane Co. included an affidavit of Rear Admiral (Retired) David Sargent,

Jr., a mechanical engineer in the Navy from 1967 and 1999 who ultimately oversaw certain ship

development and procurement programs.  Sargent explained the widespread use of asbestos in

the Navy's ships and the Navy's regulation of health warnings.  Sargent stated, without

mentioning asbestos in particular, that "[m]anufacturers of components and equipment were not

permitted, under the [Navy's] specifications, associated regulations and procedures, nor under

the actual practice as it evolved in the field, to include any warning or caution statement in

instruction books or technical manuals, beyond those required and approved by the Navy without

4

prior discussion and approval by the Navy." (March 2012 Sargent Aff. ¶ 60.) The Navy, according to Sargent, "would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves and pumps or related parts supplied during the 1940s, 1950s, or 1960s," or "in any literature or documentations supplied with its valves or pumps for Navy ships" during that period. (*Id.* ¶ 63.)

On September 4, 2012, Joyner moved to remand this case to state court. Arguing from the premise that removal jurisdiction must be narrowly construed, Joyner asserts that remand is required because Crane Co. has provided "no evidence" to support its jurisdictional allegations. (Mot. Remand at 6, ECF No. 138-1.) The affidavits attached to Crane Co.'s notice of removal, Joyner notes, pertain exclusively to the Navy, rather than the Coast Guard, and specify no government directive barring Crane Co. from warning of the health hazards of asbestos.

In its opposition brief, Crane Co. argues that its jurisdictional allegations need not be corroborated with admissible evidence at this stage of the litigation. Crane Co. nevertheless attached to its opposition an amended affidavit of Admiral Sargent. The affidavit, dated September 20, largely recycles the testimony of Sargent's earlier affidavit but appends information, pulled from public web sites, about the provenance of several of the Coast Guard ships on which Joyner allegedly served. Those ships, it seems, were designed and constructed for the Navy and subsequently were transferred to the Coast Guard. Crane Co. thus contends that its affiants' knowledge about the Navy is germane to Joyner's case and substantiates its jurisdictional allegations.

In the event the motion to remand is denied, Joyner seeks to sever the removable claim against Crane Co. and to remand all other claims to the state court. Because the other defendants did not join Crane Co.'s notice of removal, Joyner argues, this court should decline to exercise

5

supplemental jurisdiction over their claims.  Joyner also seeks to bifurcate his claim against

Crane Co., which allegedly manufactured and sold two products containing asbestos: valves and

gaskets.  Joyner argues that Crane Co. cannot assert a colorable federal defense with respect to

its Cranite gaskets because "[t]he Cranite that Crane sold to the Coast Guard is the same as that

which Crane sold in the civilian marketplace."  (Mot. Sever at 5.)  If his motion to remand the

entire case is denied, Joyner asks the court instead to remand both his claims against the other

remaining defendants and his claim against Crane Co. related to its Cranite gaskets.

## ANALYSIS

### I.      Motion to Remand

As a general matter, the "well-pleaded complaint rule" precludes federal courts from

exercising jurisdiction under 28 U.S.C. § 1331 unless a question of federal law appears on the

face of the complaint.  *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

"A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell*

*Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  The well-pleaded complaint rule is a

creature of statutory interpretation, however, rather than constitutional decree.  *See Verlinden*

*B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983).  Accordingly, Congress may override

the well-pleaded complaint rule by statute and thereby authorize the removal of particular cases

that otherwise would not fall within the scope of § 1331's grant of federal-question jurisdiction.

*See Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841–42 (1989).

Congress enacted the federal officer removal statute, 28 U.S.C. § 1442(a)(1), to abrogate

the well-pleaded complaint rule in certain cases against an officer of the United States or a

person "acting under" a federal officer.  *See Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

A civil or criminal defendant may remove a case to federal court pursuant to § 1442(a)(1) if the

removing defendant (1) is either a federal officer or a "person"[5] who acted under the direction of a federal officer, (2) raises a colorable federal defense to the plaintiff's claims, and (3) demonstrates a causal nexus between the plaintiff's claims and the conduct performed under color of federal office. *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 (E.D. Pa. 2010) (Robreno, J.);[6] *Carter v. Monsanto Co.*, 635 F. Supp. 2d 479, 488 (S.D.W. Va. 2009); *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1101 (D. Md. 1993).

Because removal implicates "significant federalism concerns," removal jurisdiction generally must be strictly construed, and any doubts about the federal court's jurisdiction must be resolved in favor of remand. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quotation marks omitted). Yet, § 1442(a)(1) is not "narrow or limited," and Congress's decision to permit federal officers—and those acting under their direction—to litigate their federal defenses in federal court "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969) (internal quotation marks omitted); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("[T]he right of removal is absolute for conduct performed under color of federal office . . . ."); *Kolibash v. Comm. on Legal Ethics*, 872 F.2d 571, 576 (4th Cir. 1989) ("[T]he right of removal conferred by § 1442(a)(1) is to be broadly construed."). The removing defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

---

[5] The District of Maryland and most other courts have determined that a corporation is a "person" under the statute. *See, e.g., Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 776 n.6 (E.D. Pa. 2010); *Virden v. Altria Grp., Inc.*, 304 F. Supp. 2d 832, 844 (N.D.W. Va. 2004); *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1102-03 (D. Md. 1993).

[6] For approximately two decades, all asbestos-related personal injury and wrongful death actions were consolidated in the Eastern District of Pennsylvania as MDL No. 875. *See In re Asbestos Prods. Liability Litig.*, 830 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2011). Judge Eduardo Robreno has presided over MDL No. 875 since 2008. In December 2011 the Judicial Panel on Multidistrict Litigation stopped transferring new asbestos cases to the MDL. *See id.*

Despite the broad scope that the Supreme Court has attached to § 1442(a)(1), a few lower courts have concluded that a more restrictive interpretation is warranted when the statute is invoked by a private government contractor rather than a federal official.  Acknowledging "the Supreme Court's admonition that Section 1442(a) should not be subject to a narrow, grudging interpretation," these courts nevertheless require private contractors to demonstrate "a kind of preliminary showing typically unknown to bona fide federal officers."  *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 140–41 (D. Mass. 2009) (internal quotation marks omitted).  Because "government contractors are degrees different from both the federal officers who originally inspired the removal statute and the cases in which the Supreme Court later coined its cautionary language," *id.* at 141, *Holdren* concluded that "comity and federalism require a careful determination of whether there is a meaningful conflict between state law and federal policy," *id.* at 137; *see also Prewett v. Goulds Pumps (IPG)*, No. 09-838, 2009 WL 2959877, at *3 (W.D. Wash. Sept. 9, 2009).  These cases require the removing defendant to submit evidence enabling the court to "carefully weigh the plausibility of the proffered defense."  *Holdren*, 614 F. Supp. 2d at 140.

The heightened burden arguably imposed in *Holdren* has been rejected by other courts. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (stating that private parties face no heavier burden than federal officers and that "the statute has historically authorized removal by private parties without qualification").  In the asbestos multidistrict litigation, Judge Robreno examined the conflicting lines of cases and, finding the constitutional concerns articulated in *Holdren* to be "overstated," he "decline[d] to follow those courts that have seemingly required a heightened showing."  *Hagen*, 739 F. Supp. 2d at 779–82.  Judge Robreno refused, therefore, "to pierce the pleadings or dissect the facts stated."  *Id.* at 782.  "It is the

sufficiency of the facts stated—not the weight of the proof presented—that matters." *Id.* at 782–83.

After reviewing the conflicting cases, this court finds the analysis in *Hagen* cogent and consistent with the general removal standard. 28 U.S.C. § 1446, which sets forth the procedures for removal, provides that the removing defendant must file a signed notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders." § 1446(a). "[T]his language in § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007)). The notice of removal is held to no higher pleading standard "than the one imposed on a plaintiff in drafting an initial complaint." *Id.* at 200.

At this nascent stage of the litigation, therefore, the motion to remand will be denied if Crane Co. "identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Hagen*, 739 F. Supp. 2d at 783. Those facts may be cited in Crane Co.'s answer, the notice of removal, the response to a motion for remand, and any affidavits attached to those pleadings. *Id.* at 773 n.3, 778 n.8. Applying this standard, Crane Co. has plausibly alleged the satisfaction of each element of the federal officer removal statute.

A.  "Acting Under"

Section 1442(a)(1) authorizes removal by a person "acting under" the direction of a federal officer. "The words 'acting under' are broad, and . . . the statute must be liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (internal quotation marks omitted). "A private firm's compliance (or noncompliance) with federal laws, rules, and

regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official,' . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153.  Nevertheless, the scope of § 1442(a)(1) is widely recognized to embrace private firms that manufacture products for the United States subject to the "strict control" of the federal government.  *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998), *cited with approval in Watson*, 551 U.S. at 153–54.

Crane Co. declares in its notice of removal that it designed and manufactured its valves "pursuant to precise contracts and specifications approved by the Navy" and under the Navy's "direct and detailed control."  (Notice ¶ 10.)  Affidavits attached to the removal notice describe with adequate specificity the Navy's strict policies governing the inclusion of health warnings on packaging or containers and in technical manuals.  (*See* March 2012 Sargent Aff. ¶ 60.)  Dr. Forman tells of the Navy's determination that a certain "asbestos-containing insulation material" should not carry any warning label despite the Navy's knowledge of the hazards posed by asbestos.  (Forman Aff. ¶ 67.)  Although that determination was unrelated to valves and gaskets, it is nonetheless illustrative of the control exerted by the Navy with respect to hazard labeling.

Joyner urges the court to reject Crane Co.'s allegations and affidavits out of hand because they pertain to the Navy rather than the Coast Guard.  As noted above, however, Crane Co. alleges that several of the relevant ships were constructed for the Navy and later transferred to the Coast Guard.  These allegations, corroborated in Sargent's September 2012 affidavit, arguably are not supported by admissible evidence, as they may need to be at the summary judgment stage of this case; Sargent's testimony was based on his review of public web sites rather than personal knowledge.  But the allegations in the removal notice are evaluated only for

plausibility, and it is certainly plausible that the ships were constructed for the Navy, in accordance with Navy specifications, before being transferred to the Coast Guard.

Hence, Crane Co. has plausibly alleged that it was acting under the strict control of the federal government when it manufactured and sold its valves to the United States Navy.  In addition, Crane Co. has plausibly alleged facts supporting its claim that the Navy prohibited any warnings concerning the dangers posed by asbestos.  These allegations, in concert with the allegation that Joyner served on ships built for the Navy, are sufficient to demonstrate, at this preliminary stage, that Crane Co. was "acting under" the "direct and detailed control" of federal officials when it allegedly failed to provide the requisite warnings.

### B.  Colorable Federal Defense

Removal under § 1442(a)(1) "must be predicated upon averment of a federal defense." *Mesa v. California*, 489 U.S. 121, 139 (1989).  Crane Co. has invoked the government contractor defense, which, when applicable, shields government contractors from certain state-law tort liabilities.  In *Boyle v. United Technologies Corp.*, the Supreme Court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  487 U.S. 500, 512 (1988).

Although first articulated in a suit alleging design defects, "[i]t is well established that the government contractor defense . . . may operate to defeat a state failure-to-warn claim."  *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996) (citing *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d

626, 629 (2d Cir. 1990)); *see also Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th

Cir. 1998) (stating that cases extending government contractor defense to failure-to-warn claims

are "reasoned soundly").   Given the practical and theoretical differences between design-defect

and failure-to-warn claims, though, different elements comprise the government contractor

defense depending on the type of claim asserted by the plaintiff.  *See Tate v. Boeing Helicopters*,

55 F.3d 1150, 1156 (6th Cir. 1995).   The government contractor defense precludes state-law tort

liability for the contractor's failure to warn if (1) the government exercised its discretion and

approved certain warnings for the products; (2) the warnings provided by the contractor

conformed to the federal specifications; and (3) the contractor warned the government about

dangers known to the contractor but not to the government.  *Oliver*, 96 F.3d at 1003–04; *see also*

*Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Tate*, 55 F.3d at 1157;

*Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710, 718 (D. Md. 1997).

     Crane Co. satisfies this requirement if its federal defense is "colorable."  *Acker*, 527 U.S.

at 431.   Courts across the nation have advanced discordant views on the burden created by the

word "colorable."   The predominant view holds that "a colorable federal defense need only be

plausible."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010); *see also Ruppel*, 701

F.3d at 1182.   That view comports with the parallelism, noted above, in the removal standard and

the pleading standard—both of which require only a "short and plain statement."   And it

comports with the Supreme Court's articulation of the purpose of § 1442(a)(1):

> One of the primary purposes of the removal statute—as its history clearly demonstrates—
> was to have [federal immunity] defenses litigated in the federal courts.   The position of
> the court below would have the anomalous result of allowing removal only when the
> officers had a clearly sustainable defense.   The suit would be removed only to be
> dismissed.   Congress certainly meant more than this when it chose the words "under
> color of . . . office."   In fact, one of the most important reasons for removal is to have the
> validity of the defense of official immunity tried in a federal court.

*Willingham*, 395 U.S. at 407 (ellipsis in original).  This reasoning is equally applicable to the government contractor defense.

Crane Co. has alleged sufficient facts to demonstrate that the government contractor defense plausibly shields it from liability for its alleged failure to warn Joyner of the dangers associated with asbestos exposure.  Crane Co. maintains that "the Navy provided Crane Co. with precise specifications regarding its valves," (Notice ¶ 15), and Sargent attested that "the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied . . . for ultimate use aboard Navy ships," (March 2012 Sargent Aff. ¶ 58.)[7]  These allegations satisfy the first element of the defense.  *See Getz v. Boeing Co.*, 654 F.3d 852, 866–67 (9th Cir. 2011) (stating that the first element is satisfied when the United States chooses its own warnings); *Tate*, 55 F.3d at 1157 (concluding that the United States exercises sufficient discretion whenever "a contractor proposes warnings that the government substantively approves, . . . even if the government did not 'prohibit' the contractor from proposing more alarming warnings"); *Butler*, 89 F.3d at 586 (stating that the government contractor defense applies to failure-to-warn claim if contractor shows it was "acting in compliance with reasonably precise specifications imposed on it by the United States" (internal quotation marks and modifications omitted)).  Joyner instead entreats this court to impose the Second Circuit's more demanding standard, which would require Crane Co. to allege that its attempts to provide warnings about the dangers of asbestos exposure were expressly prohibited by the federal government or that the content (or absence) of any warnings attached to

---

[7] Sargent further stated that "[m]anufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy."  (March 2012 Sargent Aff. ¶ 60.)

its valves was "dictated" by federal officials.[8]  Even under that more onerous standard, however, Crane Co.'s allegations are sufficient to survive the motion to remand, and this court therefore need not wade into the thicket of the intercircuit conflict at this juncture.

Crane Co. also alleges sufficient facts to satisfy the second and third elements of the defense.  According to the notice of removal, "Crane Co. delivered valves that conformed to [the Navy's] specifications."  (Notice ¶ 15.)  This allegation, though conclusory, is sufficient when considered together with the affidavits to permit a plausible inference that Crane Co. provided the warnings required by the government—or that Crane Co.'s failure to provide warnings was attributable to governmental regulations.  Crane Co. also satisfactorily alleges that the Navy "possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers, such as Crane Co."  (*Id.*)  This assertion, if established, would absolve Crane Co. of its duty to warn the Navy of the known dangers of asbestos exposure.

C.  Causal Nexus

The final element of the federal officer removal statute requires the removing defendant to demonstrate a causal nexus between the plaintiff's claims and the conduct performed under color of federal office.  *See Hagen*, 739 F. Supp. 2d at 776.  The "causal nexus" requirement

---

[8] The Second Circuit has held that a defendant invoking the government contractor defense to a failure-to-warn claim "must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law," "that whatever warnings accompanied a product resulted from a determination of a government official," and "that the Government itself 'dictated' the content of the warnings meant to accompany the product." *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d at 630.  This stringent formulation has been rejected by most other circuits.  *See Jowers*, 617 F.3d at 353 ("If a plaintiff brings a failure-to-warn case alleging a failure to conform to state law requirements, and the defendant subsequently establishes that the federal government was involved in the decision to give (or not to give) a warning and that the defendant complied with the federal government's provisions, there necessarily exists a conflict between state law and federal policy in this area."); *see also Oliver*, 96 F.3d at 1004 n.8 (declining to adopt Second Circuit's approach); *Tate*, 55 F.3d at 1157 (same).

originated in a criminal case removed to federal court on the basis of federal immunity.  *See Mesa*, 489 U.S. at 131–32 (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)).  The removing officer was required to show that the state prosecution related to acts done in the enforcement of federal law.  *See Soper*, 270 U.S. at 33.

When removal is predicated on the government contractor defense, however, many courts have concluded that the "causal nexus" requirement is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense.  *See Hagen*, 739 F. Supp. 2d at 785.  This court finds that analysis persuasive.  Whenever a government contractor is sued under state law for alleged design defects or inadequate warnings, and the contractor colorably alleges that the purported design defect or lack of adequate warning is directly attributable to "direct and detailed" government control, such that a different design or warning would have significantly conflicted with governmental regulations, it necessarily follows that there is "a causal nexus between the plaintiff's claims and the conduct performed under color of federal office."  Crane Co. therefore satisfied this element simply by virtue of having alleged a colorable government contractor defense to Joyner's claims.

Accordingly, Crane Co. has plausibly alleged sufficient facts to support removal pursuant to § 1442(a)(1) and the government contractor defense, and the case was properly removed.[9]  But

---

[9] In his motion to remand, Joyner also argues that Crane Co. waived its right to remove when it sought additional discovery while the case was pending in state court.  Joyner further contends that Crane Co. waived its right to remove when its counsel continued to depose Joyner after having decided to remove the case.  Joyner did not press this argument at the hearing, however, and in any event, the court does not find it persuasive.  A defendant may waive the right to remove by taking "substantial defensive action in state court before petitioning for removal." *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998).  The defensive action must demonstrate a "clear and unequivocal intent to remain in state court," and waiver is found only in "extreme situations." *Id.*  Seeking additional discovery and conducting depositions scheduled under emergency circumstances are not the types of substantial defensive action that constitutes such a waiver.

that is not the end of the analysis.  Joyner now seeks to bifurcate his claim against Crane Co.,

separating the valve component of the claim from the gasket component, and to sever the valve

component of the claim against Crane Co. from the rest of the litigation, remanding the bulk of

the case to the Circuit Court for Baltimore City.  Put more simply, Joyner asks this court to retain

jurisdiction over only his claim with respect to Crane Co.'s valves and to remand all other claims

to the state court.

**II.      Motion to Sever**

To determine whether the other claims—that is, all claims except the claim related to

Crane Co.'s valves—should be severed and remanded, this court must resolve whether it has

supplemental jurisdiction over the remaining claims and, if so, whether the court should decline

to exercise its supplemental jurisdiction.  The indisputable answer to the first question is yes.  28

U.S.C. § 1367(a) provides that the district court "shall have supplemental jurisdiction over all

other claims that are so related to claims in the action [over which the court has original or

removal jurisdiction] that they form part of the same case or controversy under Article III of the

United States Constitution."  Because the ultimate goal of this litigation, taken as a whole, is to

establish which defendants are liable for Joyner's mesothelioma, there is no question that the

claims against each defendant form part of the same case or controversy.

The more difficult question is whether this court should decline to exercise its

supplemental jurisdiction.  The court's discretion is circumscribed by statute:  Such a declination

is permitted only when (1) the claim over which the court has supplemental jurisdiction "raises a

novel or complex issue of State law," (2) the claim "substantially predominates over" the claim

over which the court has original or removal jurisdiction, (3) the court has dismissed all claims

over which it has original or removal jurisdiction, or (4) there are "exceptional circumstances"

16

and "compelling reasons."  28 U.S.C. § 1367(c).  And the court's discretion is further

circumscribed by case law:  After determining that one or more of these statutory factors would

be satisfied, "the federal court should consider 'principles of economy, convenience, fairness,

and comity' and whether the efforts of a party in seeking remand amount to a 'manipulative

tactic.'"  *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (quoting *Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

Weighing each of these considerations, I conclude that severance is appropriate.  The

other claims clearly predominate over Joyner's claim against Crane Co.  All of Joyner's claims

are based on state law; federal jurisdiction is invoked only because Crane Co. has asserted a

federal defense.  No other defendant has raised a federal defense, and hence there is no federal

ingredient in Joyner's claims against those defendants.  Joyner's claim against Crane Co. is but

one sliver of his complaint, moreover, and the state-law claims against the other defendants

therefore predominate over the claim against Crane Co.

Severance of Joyner's claims against the other defendants also advances fundamental

principles of fairness and comity.  The federal officer removal statute permits removal of state-

law cases to federal court because the United States has a strong interest in having questions of

federal law—including federal defenses—litigated in its own courts.  By the same token, though,

states have a strong interest in adjudicating issues of state law in *their* own courts.  *See Levin v.*

*Commerce Energy, Inc.*, 130 S. Ct. 2323, 2330–31 (2010).  This court must respect Maryland's

prerogative to apply its own laws, as well as Joyner's desire to litigate issues of Maryland law in

the Maryland state courts.

Yet severance must be done without inviting diseconomy.  To bifurcate Joyner's claim

against Crane Co. would compel Crane Co. to conduct simultaneous, parallel litigations in state

and federal court—the claim related to its valves would remain here while the claim related to its gaskets would follow the other defendants back to state court.  This would unfairly prejudice Crane Co.  Accordingly, Joyner's claims against Crane Co. will be severed from his claims against the other defendants.  All claims against Crane Co. will remain in federal court, and the claims against the other defendants will be remanded to the Circuit Court for Baltimore City.  Of course, Joyner will be permitted to renew his motion to remand the claims against Crane Co. if Crane Co. is unable to establish a federal defense.

## CONCLUSION

For the foregoing reasons, Joyner's motion to sever will be granted.  Joyner's claims against Crane Co. will be severed from his claims against all other remaining defendants.  Joyner's motion to remand will be granted with respect to the claims against the other remaining defendants.  With respect to Joyner's claims against Crane Co., the motion to remand will be denied without prejudice to renew the motion at the appropriate time.

March 7, 2013
Date

_____/s/_____
Catherine C. Blake
United States District Judge

18